UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMELO BELTRAN; VICTORINO CARRENO RAMIREZ; DIEGO EDMILSON MEJIA CHIVALAN; MARINO FLORES PEREZ,<br><br>                              Petitioners,<br><br>v.<br><br>KRISTI NOEM, Secretary, U.S. Department of Homeland Security; PAMELA BONDI, U.S. Attorney General; TODD LYONS, Acting Director, Immigration and Customs Enforcement; GREGORY J. ARCHAMBEAULT, Director, San Diego Field Office, Immigration and Customs Enforcement, Enforcement and Removal Operations; JEREMY CASEY, Warden, Imperial Regional Detention Facility; CHRISTOPHER J. LAROSE, Warden, Otay Mesa Detention Center; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; IMMIGRATION AND CUSTOMS ENFORCEMENT; DEPARTMENT OF HOMELAND SECURITY,<br><br>                              Respondents. | Case No.:  25cv2650-LL-DEB<br><br>**ORDER GRANTING PETITIONERS' PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>[ECF No. 1] |

Pending before the Court is Petitioners' Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1 ("Pet.")] and Petitioners' Ex Parte Application for Temporary Restraining Order and Order to Show Cause [ECF No. 2]. Respondents filed an Opposition [ECF No. 6], and Petitioners filed a Reply [ECF No. 7]. For the following reasons, the Court **GRANTS** the Petition and **DENIES AS MOOT** the Application for Temporary Restraining Order.

## I. BACKGROUND

Petitioner Carmelo Beltran is a citizen of Mexico who entered the United States on an unknown date. ECF No. 2-2 at 18. He was living in Santa Ana, California when he was arrested on July 8, 2025 by United States Border Patrol Agents detailed to Los Angeles. *Id.* at 19; Pet. ¶¶ 49–50.

Petitioner Victorino Carreno Ramirez is a citizen of Mexico who entered the United States on an unknown date. ECF No. 2-2 at 22. He was living in Texas when he was arrested on August 1, 2025 by Homeland Security Investigations agents in Dallas, Texas. *Id.* at 23; Pet. ¶¶ 54–55.

Petitioner Diego Edmilson Mejia Chivalan is a citizen of Guatamala who entered the United States on June 15, 2022. ECF No. 2-2 at 26. He was living in San Diego, California when he was arrested on July 31, 2025 in Murrieta, California by United States Border Patrol agents. *Id.* at 26, 28; Pet. ¶¶ 59–60.

Petitioner Marino Flores Perez is a citizen of Mexico who entered the United States on an unknown date. ECF No. 2-2 at 33. He was living in Santa Ana, California when he was arrested on August 21, 2025 by United States Border Patrol Agents detailed to Los Angeles. *Id.* at 33–34; Pet. ¶¶ 64–65.

Immigration and Customs Enforcement ("ICE") charged all Petitioners with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) as being present in the United States

///
///
///

without admission or parole.[1] Pet. ¶¶ 51, 56, 61, 66; ECF No. 2-2 at 18, 22, 29, 33. They were each placed in removal proceedings under 8 U.S.C. § 1229a and issued a Notice to Appear. Pet. ¶¶ 51, 56, 61, 66; ECF No. 2-2 at 5, 9, 14, 24. Beltran and Carreno Ramirez are detained at the Imperial Regional Detention Facility in Calexico, California. Pet. ¶¶ 50, 55. Mejia Chivalan and Flores Perez are detained at the Otay Mesa Detention Center in San Diego, California. *Id.* ¶¶ 60, 65. None of Petitioners have criminal histories that would trigger mandatory detention under 8 U.S.C. § 1226(c). *Id.* ¶¶ 49, 54, 59, 64.

Each petitioner requested a bond hearing before an immigration judge and all were denied. *Id.* ¶¶ 53, 58, 63, 68. For Beltran and Carreno Ramirez, the immigration judges stated that the court lacked jurisdiction to conduct a bond determination because they were detained under 8 U.S.C. § 1225(b)(2)A). *Id.* ¶¶ 53, 58; ECF No. 2-2 at 37, 40. For Mejia Chivalan and Flores Perez, the immigration judges stated the court lacked jurisdiction to conduct a bond redetermination pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). Pet. ¶¶ 63, 68; ECF No. 2-2 at 43, 46. In that case, the Board of Immigration Appeals ("BIA") held that a noncitizen present in the United States for almost three years without admission or inspection and arrested on a warrant issued by the Department of Homeland Security ("DHS") was subject to § 1225(b)(2)(A) and its provision for mandatory detention, and affirmed the immigration judge had no authority to hear a bond request or grant bond. *Matter of Yajure Hurtado*, 29 I&N Dec. at 220–21, 225–27 (BIA 2025).

On October 5, 2025, Petitioners filed the instant Petition for a writ of habeas corpus with the following claims for relief: (1) Petitioners' detention is in violation of 8 U.S.A. § 1226(a); (2) Petitioners' detention is in violation of DHS and Executive Office for Immigration Review ("EOIR") bond regulations; (3) Petitioners' detention violates the

---

[1] Mejia Chivalan and Carreno Ramirez are also charged under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as immigrants not in possession of a valid entry document. ECF No. 2-2 at 9, 22.

Administrative Procedure Act, 5 U.S.C. § 706(2); and (4) Petitioners' detention violates their Fifth Amendment right to due process. Pet. ¶¶ 69–82. On the same day, they filed an Application for a temporary restraining order seeking substantially the same relief as the Petition: (1) require Respondents to release them from custody or to provide them with individualized bond hearings before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven days of the issuance of an order; (2) enjoin Respondents from relocating Petitioners outside the Southern District of California pending final resolution of this case, and (3) issue an order to show cause as to why a preliminary injunction should not issue. ECF No. 2.

The Court issued an Order to Respond, setting a briefing schedule for Respondents to file any response in opposition to the Petition and Application, and for Petitioners to file a reply. ECF No. 3. On October 9, 2025, Respondents filed their Response in Opposition to Petitioners' Habeas Petition and Application for Temporary Restraining Order. ECF No. 6. On October 10, 2025, Petitioners filed their Reply. ECF No 7. On October 31, 2025, Petitioners filed a Notice of Supplemental Authority in Support of Issuance of Temporary Restraining Order. ECF No. 8.

### III.   LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

/ / /

/ / /

/ / /

## IV. DISCUSSION

### A. Jurisdiction

Respondents argue that as a threshold matter, Petitioners' claims are jurisdictionally barred under 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9). ECF No. 6 at 6.

#### 1. 8 U.S.C. § 1252(g)

Section 1252(g) states that "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

Respondents argue that Petitioners' claims are barred because "their detention arises from the decision to commence proceedings against them," which removes district court jurisdiction. ECF No. 6 at 7. Petitioners oppose, arguing that § 1252(g) does not apply because they are not challenging any discretionary action to "commence proceedings" and are instead challenging "Respondents' conclusion that they are subject to mandatory detention while those proceedings take place." ECF No. 7 at 4.

The Court finds § 1252(g) does not bar its jurisdiction over Petitioners' claims. The Supreme Court has explained that § 1252(g) does not bar jurisdiction for the "universe of deportation claims" but instead "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *2 (9th Cir. Aug. 27, 2025) ("The Supreme Court has instructed that we should read § 1252(g) narrowly."). The Supreme Court later reiterated this narrow application of § 1252(g): "We did not interpret this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281,

294 (2018) (citation omitted). Petitioners are not challenging the commencement of removal proceedings but are instead claiming a lack of legal authority to subject them to mandatory detention under 8 U.S.C. § 1225(b)(2) during proceedings. *See Ibarra-Perez*, 2025 WL 2461663, at *2 (noting that a claim based on a lack of legal authority to execute a removal order due to a violation of a court order, the Constitution, INA, or international law, does not challenge the decision or action to execute a removal order). Therefore, § 1252(g) does not limit the Court's jurisdiction in this matter.

### 2.   8 U.S.C. § 1252(b)(9)

Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9).

Respondents argue that § 1252(b)(9) applies here because Petitioners "challenge the government's decision and action to detain them, which arises from DHS's decision to commence removal proceedings, and is thus an 'action taken . . . to remove [them] from the United States.'" ECF No. 6 at 9 (alteration in original). Petitioners oppose, arguing that they are not challenging DHS's authority to detain them, but instead challenge "the new DHS and Department of Justice bond policy and the immigration judge orders considering Petitioners detained under § 1225 rather than §1226(a)." ECF No. 7 at 7.

The Court finds § 1252(b)(9) does not apply to Petitioners' claims. The Supreme Court has explained that "§ 1252(b)(9) 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1907 (2020) (quoting *Jennings*, 583 U.S. at 294–95). The Ninth Circuit has also recognized that "claims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016). Petitioners are

claiming a lack of legal authority to subject them to mandatory detention under § 1225 instead of detention with a bond hearing under § 1226(a), which is not a review for an order of removal, the decision to seek removal, or the process by which removability will be determined. *See Jennings*, 583 U.S. at 292–95 (finding that § 1252(b)(9) did not deprive the Court of jurisdiction to determine whether § 1225 and § 1226 require detention without a bond hearing). Accordingly, § 1252(b)(9) does not bar the Court from jurisdiction in this case.

### B.  Exhaustion

Respondents argue that Petitioners have failed to exhaust administrative remedies by not appealing their underlying bond denials to the BIA, and the Court should dismiss or stay this matter to allow Petitioners to exhaust. ECF No. 6 at 10 n.1.

Petitioners contend that prudential exhaustion requirements should be waived for futility, irreparable injury, and agency delay. ECF No. 2-1 at 26–30.

There is no statutory requirement under § 2241 to exhaust direct appeals before filing a petition for habeas corpus. *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004) (citation omitted). However, the Ninth Circuit requires "as a prudential matter, that habeas petitioners exhaust available judicial . . . remedies before seeking relief under § 2241." *Id.* (citation omitted) (alteration in original). A court has discretion to waive a prudential exhaustion requirement. *Id.* Such exceptions include situations "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation omitted). A petitioner seeking to waive the prudential exhaustion requirement must show that at least one of the *Laing* factors applies. *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018).

The Court finds Petitioner has met his burden to show that pursuit of administrative remedies would be futile. The BIA issued *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) on September 5, 2025 as a precedential decision, which "serve[s] as

precedent[] in all proceedings involving the same issue or issues." 8 C.F.R. § 1003.1; *Matter of Yajure Hurtado*, 29 I. & N. Dec. at 216. The BIA decision found that noncitizens who are present in the United States without admission are deemed to be "applicants for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and ineligible for a bond hearing. *Matter of Yajure Hurtado*, 29 I. & N. Dec. at 225. Therefore, appeals to the BIA would be futile because it will find Petitioners subject to mandatory detention pursuant to *Matter of Yajure Hurtado* under the very statute that Petitioners are challenging. *See Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530, at *4, 7 (C.D. Cal. Sept. 8, 2025) (finding appeals to BIA would be futile for petitioners challenging their detention under §1225(b)(2) instead of § 1226(a)). Accordingly, the Court waives the prudential exhaustion requirement.

The Court turns now to the merits of the Petition.

### C. Merits

Petitioners argue that their detention without a bond hearing is unlawful because (1) they are wrongfully held under the mandatory detention provision of § 1225(b)(2) and should instead be held under the discretionary detention of § 1226(a); (2) it violates DHS and EOIR regulations that explain that noncitizens present without having been admitted or paroled would be eligible for bond; (3) it is arbitrary and capricious and thus violates the Administrative Procedure Act; and (4) it violates their Fifth Amendment right to due process. Pet. ¶¶ 69–82.

The Court will address Petitioners' first claim for relief, which requires interpreting the relevant statutes.

Noncitizens are detained during removal proceedings under two statutes: 8 U.S.C. §§ 1225 and 1226. Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" and concerns "applicants for admission" who are defined for purposes of § 1225 as an "alien present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1). An applicant for admission "seeking admission or readmission to or transit through the United States"

is inspected by immigration officers. § 1225(a)(3). After inspection, certain applicants for admission who are deemed to be inadmissible shall be subject to expedited removal—"without further hearing or review"—unless they indicate an intention to apply for asylum or a fear of persecution, in which case they will be referred for a credible fear interview by an asylum officer. § 1225(b)(1)(A)(i)-(ii); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 (2020). For the other applicants for admission, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for a proceeding under the regular removal process of § 1229a. § 1225(b)(2)(A). Applicants for admission detained under either prong of § 1225(b) are subject to mandatory detention until removal proceedings have concluded, but may be paroled into the United States by DHS "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see also Jennings*, 583 U.S. at 300, 302 (finding that parole is the only statutory provision for release from detention under § 1225(b) during removal proceedings). There is no statutory right to a bond hearing for noncitizens detained under § 1225(b). *See Jennings*, 583 U.S. at 296–97.

   Section 1226 is titled "Apprehension and detention of aliens" and provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." § 1226(a). The government may then "continue to detain the arrested alien" or release the alien on bond or conditional parole. § 1226(a)(1)-(2). After the initial decision is made to either detain or release the noncitizen, the noncitizen may request a bond hearing (i.e., custody redetermination) before an immigration judge. § C.F.R. § 1236.1(d)(1). However, § 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)." *Jennings*, 583 U.S. at 289. Section 1226(c) specifies that noncitizens who are inadmissible or deportable because of certain crimes are ineligible to be released on bond or parole, unless it is deemed necessary for witness-protection purposes. §§ 1226(a), (c).

|   |   |
|---|---|
| 1 | Petitioners and Respondents interpret § 1225 and § 1226 differently. Petitioners contend that the plain text of § 1226 demonstrates that § 1226(a) applies to noncitizens like themselves who were residing in the United States at the time they were apprehended and are detained pending a decision on whether they should be removed from the country. Pet. ¶¶ 44–48, 70–71. They further argue that the plain text of § 1255 limits § 1255(b)(2) to "arriving" noncitizens subject to "inspection" who are "seeking admission." *Id.* ¶ 47. Respondents oppose, arguing that Petitioners are "applicants for admission" per the plain language of the statue and subject to the mandatory detention provisions of § 1225(b)(2). ECF No. 6 at 12. |

"The starting point for our interpretation of a statute is always its language." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989) (citation omitted). "We must enforce plain and unambiguous statutory language according to its terms." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010) (citations omitted). "But oftentimes the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *King v. Burwell*, 576 U.S. 473, 486 (2015) (internal quotation marks and citation omitted). Thus, "when deciding whether language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme." *San Carlos Apache Tribe v. Becerra*, 53 F.4th 1236, 1240 (9th Cir. 2022), *aff'd,* 602 U.S. 222 (2024) (internal quotation marks omitted) (quoting *King*, 576 U.S. at 486).

The Court finds the plain text of § 1225(b)(2) does not support Respondents' contention that it applies to any noncitizen present in the United States who has not been admitted. The terms, title, and context indicate a narrower application. An "applicant for admission" detained under § 1225(b)(2) requires an "examining immigration officer" to determine that the noncitizen "seeking admission is not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A). Broadly reading §1225(b)(2) detention to merely require being "applicants for admission"—noncitizens present in the United States who have not been admitted or who arrive in the United States—ignores the other language that also

requires them to be "seeking admission" and for the examining officer to determine they are "not clearly and beyond a doubt entitled to be admitted." *See Shulman v. Kaplan*, 58 F.4th 404, 410–11 (9th Cir. 2023) ("[A] court 'must interpret the statute as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.'" (citation omitted)); *see also Guerrero Orellana v. Moniz*, No. 25-CV-12664-PBS, 2025 WL 2809996, at *6 (D. Mass. Oct. 3, 2025); *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4–5 (E.D. Cal. Sept. 23, 2025); *Garcia v. Noem*, No. 25-CV-02180-DMS-MMP, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025). Furthermore, the title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," which indicates that this section is limited to people applying for admission when they arrive in the United States or upon recent entry. *See Dubin v. United States*, 599 U.S. 110, 120–21 (2023) ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." (internal quotation marks and citation omitted)). There is no indication that Petitioners were actively "seeking admission" upon arrival or recent entry at the border and that immigration officers inspected Petitioners and determined they were not entitled to be admitted.

Respondents contend that "seeking admission" is simply a characteristic of all "applicants for admission" and not a separate requirement, but the Court is not persuaded. *See* ECF No. 6 at 15. As other courts have found, the use of the present participle "seeking" "necessarily implies some sort of present-tense action." *See, e.g.*, *Lepe*, 2025 WL 2716910, at *5 (quoting *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025)). The plain text of § 1225(b)(2)(A) requires a noncitizen present without admission to be actively seeking lawful entry. *See id.*; *Esquivel-Ipina v. LaRose*, No. 25-CV-2672 JLS (BLM), 2025 WL 2998361, at *5 (S.D. Cal. Oct. 24, 2025) (agreeing with other courts in the Ninth Circuit who find that "seeking admission" requires an

affirmative act such as entering the United States or applying for status (citing cases)). Respondents' interpretation would render the term "seeking admission" superfluous. *See Shulman*, 58 F.4th at 410–11; *Lepe*, 2025 WL 2716910, at *5 ("The government's position would make the 'seeking admission' language meaningless and violate the rule against surplusage." (citations omitted)). The Ninth Circuit has already rejected an interpretation of "applicant for admission" that would consider any applicant for admission as someone also "deemed to have made an actual *application* for admission." *See Torres v. Barr*, 976 F.3d 918, 927 (9th Cir. 2020); *see also Echevarria v. Bondi*, No. CV-25-03252-PHX-DWL (ESW), 2025 WL 2821282, at *6 (D. Ariz. Oct. 3, 2025) (citing *Torres*, 976 F.3d 918). Respondents alternatively argue that Petitioners have recently filed applications for relief from removal in their § 1229a removal proceedings, which qualifies as "seeking admission." ECF No. 6 at 15 & n.2. The Court finds Petitioners were not "seeking admission" upon arrival or recent entry at the border pursuant to § 1225(b)(2).

Additionally, if Respondents' argument that all noncitizens present in the country without admission are subject to mandatory detention under § 1225(b)(2) is true, it would render superfluous a recent amendment to § 1226(c). *Lepe*, 2025 WL 2716910, at *6 (collecting cases). Section 1226(a) provides discretionary detention of noncitizens pending a decision on removal, except for certain noncitizens who are inadmissible or deportable due to certain crimes described in § 1226(c). In 2025, the Laken Riley Act added a subsection to § 1226(c)(1), denying bond or parole to any noncitizen who is both (1) inadmissible under § 1182(a)(6)(A), (6)(C), or (7) as a noncitizen "present without admission or parole," or without valid entry documents, or who used fraud or misrepresentation to obtain entry documents, *and* (2) charged with, arrested for, or convicted of certain crimes. Laken Riley Act, Pub. L. No. 119-1, 139 Stat 3 (2025); § 1226(c)(1)(E). In other words, if noncitizens are present without admission and they have *not* committed certain crimes, they are detained under § 1226(a)'s default provisions. *See* § 1226(a) (providing discretion to release noncitizens on bond or parole "[e]xcept as provided in subsection (c)"); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256

(W.D. Wash. 2025). "As the Supreme Court has recognized, when Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." *Rodriguez*, 779 F. Supp. 3d at 1256–57 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)). Therefore, if—as Respondents urge—all noncitizens present without admission were already subject to mandatory detention under § 1225(b)(2), there would be no need for an amendment that mandates detention for all noncitizens "present without admission or parole" *and* who have been charged with certain crimes. *See Lepe*, 2025 WL 2716910, at *6; *Garcia*, 2025 WL 2549431, at *6. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995), *abrogated on other grounds b*y *Riley v. Bondi*, 145 S. Ct. 2190 (2025). The Court will not find that Congress passed the Laken Riley Act to add an amendment that performs the same function as §1225(b)(2). *Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

Accordingly, under the plain language of § 1225 and § 1226, the Court finds, as have many other courts addressing the same issue, that Petitioners' detention, as noncitizens present in the United States without being admitted or paroled under § 1182(a)(6)(A)(i) and who were residing in the country prior to being charged, is governed by the discretionary detention provision of § 1226(a) and not the mandatory detention of § 1225(b)(2).[2] *See, e.g.*, *Contreras-Cervantes v. Raycraft*, No. 2:25-CV-13073, 2025 WL 2952796, at *8 & n.4 (E.D. Mich. Oct. 17, 2025) (collecting cases); *Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *1 n.3 (W.D. Wash. Sept. 30, 2025) (collecting cases). *But see Chavez v. Noem*, No. 3:25-CV-02325-CAB-SBC, 2025 WL

---

[2] Having reached this conclusion on Petitioners' first claim for relief, the Court declines to address Petitioners' remaining claims for relief.

2730228, at *4 (S.D. Cal. Sept. 24, 2025) (finding petitioners as noncitizens residing in the country without inspection or parole are "applicants for admission" and properly detained under § 1225(b)(2)). This finding also comports with the Supreme Court's interpretation that § 1225(b) applies to the detention of "aliens seeking admission into the country" while § 1226 applies to "aliens already in the country" during removal proceedings. *See Jennings*, 583 U.S. at 289. It is also consistent with years of agency practice based on regulations from EOIR in 1997 issued to implement the provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which includes the detention provisions of § 1225 and § 1226. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10312 (Mar. 6, 1997). The agency regulation explained under a section titled "Apprehension, Custody, and Detention of Aliens" that "non-criminal aliens" are subject to "the new $1,500 minimum bond specified by IIRIRA," and that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." *Id.* at 10323.

## V.   CONCLUSION

For the reasons set forth above, the Court **ORDERS**:

1. Petitioners' Petition for Writ of Habeas Corpus is **GRANTED**.[3]
2. Petitioners' Application for Temporary Restraining Order is **DENIED AS MOOT**.

/ / /

/ / /

/ / /

---

[3] Petitioners' requested relief includes an award of attorney's fees and costs under the Equal Access to Justice Act, as amended, 28 U.S.C. § 2412, and on any other basis justified under law. Pet. at 23. The Court denies this relief without prejudice.

3.     Respondents shall provide Petitioners with individualized bond hearings before an immigration judge pursuant to 8 U.S.C. § 1226(a) within **seven (7) days** of the date of this order. At any such hearing, Respondents **SHALL NOT** deny Petitioners bond on the basis that 8 U.S.C. § 1225(b)(2) requires mandatory detention.

4.     The Clerk of Court shall enter judgment in Petitioners' favor and close this case.

**IT IS SO ORDERED**.

Dated:  November 4, 2025

_____
Honorable Linda Lopez
United States District Judge